UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
DEC 2 - 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

FELTON A. SPEARS, JR., *et al.*   )
                                  )
    Plaintiffs,                  )    Civil No. 1:13-mc-01167 (RCL)
                                  )
v.                                )
                                  )
FIRST AMERICAN EAPPRAISEIT,       )
(a/k/a eAppraiseIT, LLC)          )
                                  )
    Defendant.                   )
                                  )

## MEMORANDUM OPINION

This matter comes before the Court after this Court issued an order deferring plaintiffs' Motion to Compel Compliance with Subpoena *Duces Tecum* served on the Office of the Comptroller of Currency ("OCC") [ECF No. 1]. Upon review of the parties' supplemental memoranda summarizing their arguments regarding plaintiffs' Motion, this Court DENIES plaintiffs' Motion for the reasons stated below.

### I.  BACKGROUND

The relevant facts are as follows: on January 30, 2013, plaintiff served the OCC with a subpoena *duces tecum* seeking documents cited and summarized by the U.S. Senate Permanent Subcommittee on Investigations ("Senate PSI") in its 2011 report on the 2007-2008 financial crisis. Pl.s' Supp. Mem. in Support of Motion 1. These documents were provided under seal and without waiver of any privileges to the Senate PSI by the Office of Thrift Supervision ("OTS")—which has since been succeeded by the OCC—pursuant to the Senate PSI's subpoena. OCC's Supp. Mem. 2–3. The OCC objected to the plaintiffs' subpoena and noted that many of the documents sought may be subject to various privileges. *Id.* at 3. After months of conferring

1

between plaintiffs and the OCC, plaintiffs narrowed their search to "15 specific Bates-stamped documents." *Id.* After OCC claimed that it could not locate the documents, plaintiffs filed a Motion to Compel Compliance with the subpoena on October 16, 2013, specifying that plaintiffs are only seeking the 15 Bates-stamped documents referenced by the Senate PSI report. *Id.* This Court deferred a decision on the motion and ordered an OCC representative to submit to a deposition so plaintiffs could determine what steps the OCC took to locate the documents. *Id.* at 3–4. The OCC later retrieved the 15 Bates-stamped documents from the Senate PSI. *Id.* at 4. After reviewing the documents, the OCC sent a letter to plaintiffs noting that the OCC was withholding three documents from plaintiffs based on claims of the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege. *Id.*

This Court again notes that the parties appear to be in contention over only a few documents even though the plaintiffs' Motion to Compel Compliance is directed towards a subpoena that requests a broad range of documents. *See* May 29, 2014 Mem. and Order 2. This Court addresses plaintiffs' Motion and the supplemental briefing as concerning only the three documents that the OCC withheld from the plaintiffs.

II. **LEGAL STANDARDS**

   A. **Attorney-Client Privilege**

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege protects communications between client and attorney when the communication is for the purpose of securing an opinion on the law, legal advice or services, or assistance in a legal proceeding. *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (internal quotations marks and citations omitted). "In the governmental context, the client may be the

agency and the attorney may be an agency lawyer." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997).

### B. Work Product Protection

The work product protection privilege extends to "written materials that lawyers prepare in anticipation of litigation, ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials." *United States v. Williams Cos., Inc.*, 562 F.3d 387, 393 (D.C. Cir. 2009) (internal quotation marks and citations omitted). There are two relevant inquiries for applying this doctrine. The first is whether there was "a subjective belief that litigation was a real possibility" when the document was created and whether that belief was "objectively reasonable." *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (internal quotation marks omitted). The second demands that the document have been prepared because of the prospect of litigation, meaning that the document was prepared "for the purpose of assisting an attorney in preparing for litigation, and not some other reason." *Alexander v. F.B.I.*, 192 F.R.D. 42, 46 (D.D.C. 2000).

### C. Deliberative Process Privilege

The deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). A document must be both "predecisional" and part of the "deliberative process" in order to qualify for the privilege. *Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680 n.4 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A document is predecisional "if it was generated before

the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. Food & Drug. Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted). Moreover, for a document to be deliberative, the information "must reflect the personal opinions of the writer rather than the policy of the agency." *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Application of Privileges

The three documents withheld by the OCC are covered by the privileges that the OCC asserts. Indeed, plaintiffs do not deny that any of the above-listed privileges apply; rather plaintiffs argue that the privileges have been waived. Pl.s' Supp. Mem. in Support of Motion 3–8 (providing plaintiffs' privilege waiver arguments).

The first withheld document is a memorandum from OTS attorneys to the Chief Counsel and Deputy Director of the OTS. OCC's Supp. Mem. 4. It contains "legal analysis, advice, and recommendations related to a possible enforcement action against Washington Mutual Bank" and each page is marked both "CONFIDENTIAL" and "PREDECISIONAL." *Id.* As a predecisional, deliberative communication from attorney to client in anticipation of possible litigation, this memorandum is covered by the attorney-client privilege, attorney work product privilege, and the deliberative process privilege.

The second withheld document is a list of notes written by an OTS enforcement attorney "outlining factual and legal analysis of work she conducted on behalf of the OTS in an investigation of Washington Mutual Bank in preparation for possible litigation. . . ." *Id.* at 5. Again, as a communication from attorney to client and in preparation for possible litigation, this

document is protected by the attorney-client privilege and the work product doctrine.

The third and final withheld document is a memorandum by the OTS Regional Appraiser to an OTS Regional Enforcement Counsel. In this regard, it is a communication from the agency-client to its counsel. This memorandum "reviews an apparent complaint filed by the New York State Attorney General and provides [the Appraiser's] thoughts and commentary to the attorney." *Id.* As communication from client to attorney for the purpose of obtaining legal advice, it falls squarely within the ambit of the attorney-client privilege.

### B. Waiver of Privilege

Plaintiffs claim that the OTS waived any privileges that may apply to the documents when it provided the documents to the Senate PSI because "voluntary disclosure to a third party waives the attorney-client privilege, which is especially true where the substantive conclusion of the information also has been publically disclosed." Pl.s' Supp. Mem. in Support of Motion 4. Regarding the attorney-client privilege, plaintiffs cite *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101 (D.D.C. 2013) as an example of public disclosures of substantive conclusions to support their proposition. *Nat'l Sec. Counselors*, however, presents a different factual situation because the court determined that privilege had been waived regarding only a few documents which had substantive conclusions publicly disclosed by the Department of Justice's ("DOJ") own Office of Legal Counsel. The court determined that privilege had been waived because the DOJ had made public disclosures of certain documents or conclusions of those documents, which it later sought to withhold by asserting privilege. In the case at issue, however, the OCC, as the successor of the OTS, is seeking to assert privilege over documents and the Senate PSI is the entity that allegedly disclosed those documents' substantive conclusions. This is not sufficient to constitute a waiver by public disclosure of substantive conclusions.

Furthermore, documents produced pursuant to a subpoena are not voluntarily disclosed. *In re Subpoenas* Duces Tecum, 738 F.2d 1367, 1373 (D.C. Cir. 1984) ("The difference between voluntary disclosure and disclosure by subpoena is that the latter, being involuntary, lacks the self-interest which motivates the former."). The OTS provided the documents under seal to the Senate PSI. There is less reason to find waiver when documents have been provided pursuant to a subpoena, and provided under seal, as was the case when OTS provided the documents to the Senate PSI.

Plaintiffs also assert that the OTS's disclosure to the Senate PSI constitutes waiver of the attorney work product privilege. Plaintiffs cite *U.S. v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010) for the proposition that "voluntary disclosure waives the attorney-client privilege. . . ." The case also addresses waiver of work product privilege. The *Deloitte* court notes that "[v]oluntary disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process. Nevertheless, disclosing work product to a third party can waive protection if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Id.* at 140 (internal quotation marks and citations omitted). Therefore, under these circumstances, even if the disclosure of documents were considered voluntary, because the documents were provided under seal by the OTS to the Senate PSI, this Court cannot reason that the disclosure was inconsistent with the maintenance of secrecy. It follows that any disputed documents in this case covered by the work product privilege are protected because this privilege has not been waived.

In addition, plaintiffs claim that the deliberative process privilege was waived as well when the OTS disclosed the documents to the Senate PSI. However, the cases that plaintiffs cite to support this argument acknowledge that public disclosure of a document waives the privilege

6

for only the information publicly disclosed. *See In re Sealed Case*, 121 F.3d at 741; *Ivy Sports Med., LLC v. Sebelius*, 2012 WL 5248176, at *2 (D.D.C. 2012). The public disclosure in these cases consisted of public reports created and released to the public by the entity later asserting privilege. It is not the case, however, that the OTS's disclosure of documents pursuant to a subpoena to the Senate PSI is tantamount to a public disclosure. Furthermore, the OCC is not responsible for Senate PSI's report, which contained portions of the documents on which the OCC claims privilege. Because the OTS's disclosure of documents pursuant to a subpoena to the Senate PSI cannot be classified as a public disclosure, there is no waiver of the deliberative process privilege in this instance.

Finally, plaintiffs claim that all privileges regarding the sought-after documents are waived because the OCC failed to "adequately object to Plaintiffs' Subpoena based on privilege and thereby waived any privilege claim." Pl.s' Supp. Mem. in Support of Motion 7. Plaintiffs assert that the OCC's general admonitions in its court filings that the documents sought may be subject to various privileges are "vague, conclusory . . . [and] insufficient to raise any privilege." *Id.* at 8. This Court disagrees with plaintiffs' claim that generalized objections based on possible privileges constitutes waiver when the OCC did not have possession of the documents. The OCC had not obtained the Bates-stamped documents, and therefore, had no way of knowing exactly which privileges would apply and for what reasons those privileges would apply. Plaintiffs cite several cases to support their argument; however, in each of these cases the party making generalized objections was in possession of the documents at issue and simply failed to assert more detailed privilege objections. Here, the OCC could not have been more specific because it did not have the documents, and therefore could not provide more specific reasons for the application of privilege. The OCC did provide more detail as to which privileges apply to the

sought-after documents and why those privileges apply once it obtained the documents. *See* OCC's Supp. Mem. 6–7. For these reasons, this Court concludes that the OCC's general references to the possible application of privilege to the documents plaintiffs now seek were sufficient to prevent waiver of its privilege claims.

### C. The Principles of Maintaining Privilege are Served

Plaintiffs' final argument is predicated on the notion that the principles of applying the asserted privileges are not served by maintaining such privileges in this case. Pl.s' Supp. Mem. in Support of Motion 9. First, the goal of encouraging candor by protecting communications between attorney and client clearly still applies as the OTS disclosed the documents in question under seal to the Senate PSI. The OCC now wishes to maintain that confidentiality. Second, in weighing the need to apply the work product privilege against plaintiffs' undue hardship and substantial need, plaintiffs have not articulated why they have a substantial need for these specific documents to make their case in the pending litigation. Finally, the goals of the deliberative process privilege are met by maintaining the protection over these documents, which encourages openness and candid discussion amongst agency members in future deliberations and decisions.

### IV. CONCLUSION

In sum, plaintiffs' Motion to Compel Compliance with Subpoena *Duces Tecum* is DENIED. The documents plaintiffs seek are privileged, those privileges have not been waived, and there is no reason this Court should ignore the application of privilege for policy reasons under these circumstances.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on December 1, 2014.